**In re Betty PIZZOLATO, Debtor.**

**No. 154.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

Dec. 5, 1967.

Wootton, Land & Matthews, Hot Springs, Ark., for Ark. First Nat. Bank of Hot Springs.

Loftin, Herrod & Cole, North Little Rock, for debtor.

## MEMORANDUM

JOHN E. MILLER, Senior District Judge.

This action is before the court on a Petition for Review filed pursuant to 11 U.S.C.A. § 67 by the Arkansas First National Bank of Hot Springs, Arkansas. The petition seeks to have reversed an order of the Referee in Bankruptcy dated August 1, 1967.

The pertinent facts as found by the Referee are as follows:

This is a proceeding under Chapter XIII of the Bankruptcy Act. Upon 100% acceptance by the unsecured creditors and by all secured creditors except the

bank, and upon a separate finding by the court that the plan was feasible, the plan was confirmed.

The debtor is a practical nurse at St. Joseph's Hospital at Hot Springs, Arkansas. She resides beyond the city limits on Highway No. 7. Her husband is unemployed due to his disability and draws compensation from the Veterans Administration. The combined income of the debtor and her husband reflects a take-home income of $416.90 per month. The debtor and her husband have two children living in the home, both of whom are of school age.

The debtor and her husband, Carlo Pizzolato, purchased the home and real property at issue on May 28, 1964, from LeRoy Slaight and Jeanette Slaight, his wife, for a total consideration of $12,000.-00, of which $3,000.00 was paid in cash, which left a balance of $9,000.00. The bank financed $4,500.00, for which the debtor and her husband executed their promissory note and real estate mortgage on June 3, 1964, which deed of trust was filed for record on June 4, 1964, in Record Book of Mortgages No. 554, page 655. The note called for installments of $53.00 per month, which payments would be first credited to interest and the balance to principal. The balance of the unpaid purchase price of $4,500.00 was met by executing a second mortgage to LeRoy Slaight, et ux. The debtor and her husband signed a note to the Slaights payable at $40.00 per month. The present balance of the debt to the bank is $4,321.37.

Payments have been made from July 3, 1964, up to May 10, 1967, as indicated in the following table:

| Payment Due | Date Paid | Interest Paid to | Amount of Int. | Amount of Prin. | Balance Due |
|---|---|---|---|---|---|
| 7/5/64 | 7/3/64 | 7/3/64 | $ 30.00 | $ 23.00 | $4471.00 |
| 8/5/64 | 8/3/64 | 8/3/64 | 30.84 | 22.16 | 4454.84 |
| 9/5/64 | 9/4/64 | 9/4/64 | 31.68 | 21.32 | 4433.52 |
| 10/5/64 | 10/5/64 | 10/5/64 | 30.55 | 22.45 | 4411.07 |
| 11/5/64 | 11/3/64 | 11/3/64 | 28.43 | 24.57 | 4386.50 |
| 12/5/64 | 12/7/64 | 12/7/64 | 33.15 | 19.85 | 4366.65 |
| 1/5/65 | 1/5/65 | 1/5/65 | 28.14 | 24.86 | 4341.79 |
| 2/5/65 | 7/2/65 | 3/1/65 | 53.07 | —— | 4341.79 |
| 3/5/65 | 8/2/65 | 4/2/65 | 53.07 | —— | 4341.79 |
| 4/5/65 | 9/13/65 | 6/19/65 | 53.07 | —— | 4341.79 |
| 5/5/65 | 1/19/66 | 8/13/65 | 53.07 | —— | 4341.79 |
| 6/5/65 | 3/1/66 | 1/24/66 | 158.04 | .76 | 4341.03 |
| 9/1/65 | 4/11/66 | 4/11/66 | 78.28 | 296.44 | 4044.59 |
| 4/1/66 | 5/5/66 | 5/5/66 | 26.57 | 31.43 | 4013.16 |
| 5/1/66 | 1/6/67 | 1/6/67 | 274.32 | —— | 4013.16 |
| 6/1/66 | 4/4/67 | Bal. Int. | 53.00 | —— | 4013.16 |
| 7/1/66 | 5/10/67 | 5/5/67 | 53.00 | —— | 4013.16 |

The Referee also found that the continuance of the contract whereby the debtor would pay the bank $53.00 is essential to the operation of the overall plan, and that if the debtor is deprived of the occupancy of the home to care for her husband and minor children, the debtor's plan would collapse.

On June 13, 1967, the bank filed a foreclosure action in the Chancery Court of Garland County, Arkansas, against the debtor, her husband, and LeRoy and Jeanette Slaight, the holders of a second mortgage on the property in question. On June 20, 1967, the debtor filed her petition to stay the state Chancery Court

proceedings. The Referee entered a temporary order granting the stay, and on August 1, 1967, after a full hearing, a permanent order to the same effect was entered. It is this permanent order which petitioner seeks to have reversed.

This is the second Petition for Review filed by the bank in this case. The first was filed on April 3, 1967, and culminated in an opinion, In re Pizzolato, (W.D.Ark. 1967) 268 F.Supp. 353, dismissing the petition.

With the earlier petition the bank sought to have reversed the Referee's order denying the bank's petition for reclamation of an automobile which secured another debt owed by the debtor to the bank. The bank had a security agreement whereby the debtor was to pay $70.00 per month and a final "balloon payment" of $435.36. The "plan" called for the $70.00 payments but made no provision for the larger final payment. Because the bank, as a secured creditor, had not consented to the plan, it argued that the denial of reclamation "dealt with" it in violation of § 652(1) of the Bankruptcy Act, 11 U.S.C.A. § 1052(1). The court held that secured creditors are not "dealt with" by the plan unless their interests are "materially and adversely affected."

Also given primary consideration was the impact of reclamation (here foreclosure) of the automobile on the overall plan of rehabilitation. Additional consideration was given to the extent of the debtor's equity in the property sought to be retaken. As this case involves very similar facts, although in a different setting, the same principles govern.

■ Whether a creditor's interests are materially and adversely affected is a question to be determined by the facts in each case. Here there would be no foreseeable impairment of security because the evidence shows conclusively that the house has a market value more than double the amount now owing on the note. Also, the collection on the note would not be seriously delayed. The plan calls for payments pursuant to the terms of the note—$53.00 per month. This would delay the collection to some extent. The table, supra, shows that irregular payments were made only during a period beginning February 1965 and ending March 1967. During this period $1,378.00 would have been owing according to the terms of the note, while $1,078.42 was actually paid. This left a deficit of $299.58 in the monthly payments.

The Referee found that foreclosure would destroy the plan and that the bank had impliedly consented to the accumulation of the deficit by its conduct in failing, until the foreclosure suit was filed, to demand strict compliance with the terms of the note. In this instance the injury to the bank is so slight when compared to the consequences of foreclosure that equity demands that the bank's action be enjoined. The bank's security in the house assures that the deficit, although delayed, will be paid with interest, and the court's action in enjoining foreclosure will in no way prevent collection but merely defer it to a later date when the debtor can make the payments without financial collapse and being forced into bankruptcy.

General Order in Bankruptcy 47 provides:

> "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous * * *."

See O'Rieley v. Endicott-Johnson Corp., (8 Cir. 1961) 297 F.2d 1, 4.

This court reviewed rather extensively the question involved herein in Pizzolato, supra, and is convinced that the principles therein stated, when applied to the facts as found by the Referee, require an affirmance of the Referee's order. The Referee's findings of fact are not clearly erroneous and are supported by substantial evidence.

■ On its brief before the Referee, the bank placed heavy reliance on the fact of the debtor's relatively small equity

in the home. A second mortgage is held on this home for a considerable amount, over $4,000.00, but in this case that could be considered as the debtor's equity because it was found that the second mortgagee's interests are the same as the debtor's in that they all want to see the bank's note paid to avoid foreclosure.

Therefore, the court finds that the interest of the bank, as a nonconsenting, secured creditor, is not materially and adversely affected, and the order of the Referee enjoining the foreclosure should be affirmed.

An order is being entered today affirming the order below and dismissing the Petition for Review.