**In the Matter of Richard CASSIDY, Debtor.**

**No. 74 B 1340.**

United States District Court, E. D. New York.

Sept. 19, 1975.

---

Eugene U. DeVivo, by Dominick Giordano, Brooklyn, N. Y., for appellant.

Samuel Newfield, New York City, for appellee.

## OPINION

NEAHER, District Judge.

Appellant Dime Savings Bank of New York ("the Bank") appeals from a bankruptcy judge's order dated March 4, 1975, enjoining enforcement of its first mortgage lien against the personal dwelling of the debtor, Richard Cassidy. The Bank had obtained a default judgment of foreclosure in the New York Supreme Court, Suffolk County, on February 8, 1974. A referee in foreclosure was appointed and a sale was scheduled for November 8, 1974. On October 16, 1974, Cassidy filed a petition for a wage earners' plan under Chapter XIII of the Bankruptcy Act, 11 U.S.C. § 1001 et seq., and on October 21, 1974 moved successfully by order to show cause to enjoin the scheduled sale. No hearing on the factual questions raised was had before the bankruptcy judge and there were no findings other than the bare recital in the order appealed from that Cassidy will suffer irreparable injury if the lien is foreclosed and the Bank will suffer no substantial injury if it is not foreclosed.[1]

■ Prior cases have established certain criteria to be met before secured creditors in proceedings such as these are stayed from foreclosing on their security. Foremost among them is a finding that the debtor is acting in good faith in submitting a plan and that the plan is feasible. *Hallenbeck v. Penn Mutual Life Insurance Company*, 323 F.2d 566, 572 (4 Cir. 1963). See also *In re Pizzolato*, 281 F.Supp. 109, 110 (W.D.Arkansas 1967). Additionally, the stay should be necessary either to the preservation of the debtor's estate or to his ability to execute the plan. *Thompson v. Ford Motor Company*, 475 F.2d 1217, 1218–19 (5 Cir.

1. In fact, it appears that the order signed by the bankruptcy judge merely memorialized the stay granted in open court on February 26, 1975.

1973). The stay should not impair the secured creditor's security and should be conditioned on the curing of delinquent amounts due the secured creditor within a reasonably short period. *In re Rutledge,* 277 F.Supp. 933, 936 (E.D.Arkansas 1967). See generally Advisory Committee Notes to Bankruptcy Rule 13–401.[2]

Urging reversal of the bankruptcy judge's order, the Bank argues essentially that (1) Cassidy is not proceeding in good faith; (2) the plan is not feasible; (3) the plan does not provide for the prompt curing of the defaults on the secured claim; and (4) Cassidy has, in fact, no equity in the real property nor is the property necessary for the success of the proposed wage earners' plan.

The Bank's first point is based on a number of asserted facts from which, it contends, an inference of bad faith arises. It appears undisputed that Cassidy had filed a previous petition under Chapter XIII on March 27, 1974, which was dismissed without prejudice on July 16, 1974 for failure to file a wage earners' plan. In conjunction with the filing of that petition, Cassidy had obtained a stay preventing the Bank from proceeding with a foreclosure sale which had been set for April 9, 1974. About that time, the Bank agreed to Cassidy's request that the mortgage be reinstated at current interest rates with all arrearages and foreclosure charges to be immediately paid by him. Cassidy, however, never signed the papers sent him by the Bank to consummate the reinstatement, his delinquency continued and the Bank then again pressed forward with its foreclosure sale remedy. Cassidy's second petition, in the Bank's view, is simply another attempt to impede foreclosure proceedings.

In further support of its position, the Bank argues that the proposed wage earners' plan is not feasible because, even if Cassidy had sufficient income to make the payments called for by the proposed plan, it would take an unreasonably long time—seven years—to consummate the plan and repay the unsecured creditors.

The Bank also maintains that the provision of the proposed plan calling for the payment to it of presently overdue amounts over a three-year period is an unreasonable extension of its rights under its contract with Cassidy. Moreover, with respect to the question of the debtor's equity in the house, the Bank asserts that the fair market value of the property is $42,500 as against some $75,000 in secured debts to the Bank and other creditors.

Cassidy, for his part, controverts many of the Bank's factual contentions and emphasizes the critical importance of the house to his family life.

However unfortunate the loss of a house may be to a debtor, unless the criteria established by the cases are present, the stay should not have issued. *In re Tracy,* 194 F.Supp. 293 (D.C.Cal. 1961). Although irreparable injury is an ingredient in the grant of traditional injunctive relief, it is insufficient, standing alone, to warrant staying a secured creditor in a Chapter XIII proceeding. Findings must be made concerning the factors upon which a decision granting or denying a stay must turn; *i. e.,* the debtor's good faith, the feasibility of

---

2. Thus in *Matter of Garrett,* 203 F.Supp. 459 (N.D.Ala.1962), the court continued the referee's injunction against foreclosure of a mortgage on the debtor's real property upon the express finding by the referee that

> "the debtor owns an equity of redemption in the real estate subject to the mortgage . . . of substantial value above and beyond the balance due upon the mortgage debt. Further, the debtor had tendered to the [secured creditor] . . . the full sum of all arrearage payments in cash at

the time of the confirmation of the plan." (203 F.Supp. at 460.)

The court reasoned that

> "it would be improper to allow an asset of the estate to be dissipated by permitting a foreclosure during the pendency of a Chapter XIII proceeding, to the potential detriment of other creditors who may ultimately have an interest in that very asset if the case is converted to bankruptcy." (203 F. Supp. at 461.)

the plan, whether there is equity in the security, and whether the secured creditor is being unreasonably delayed in the collection of past due debts. Such findings are wholly lacking here.

Accordingly, the order of the bankruptcy judge must be reversed and the matter remanded for a hearing on the factual questions presented. The court is not unmindful that these wage earner proceedings should not be made into expensive and time-consuming matters. However, if the rights of all parties are to be accorded due recognition, reviewable findings must be made on the determinative factors set forth above.[3]

Reversed and remanded.

3. On the argument before this court it appeared the other material facts might not be in dispute. Obviously, time and expense would be saved by stipulating such facts at any hearing before the bankruptcy judge on the question of a stay.