In re Godfrey and Audrey **PEARSON**, Debtors.

**Bankruptcy No. 180–02638–21.**

United States Bankruptcy Court, E. D. New York.

March 31, 1981.

---

Gerald A. Kagan, New York City, for debtors.

Aaron, Mattikow & Lorenz, P.C. Jericho, N. Y., for creditor Vanguard Holding Corp.

Robert W. Tauber, Brooklyn, N. Y., Trustee in Bankruptcy.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

This proceeding raises the question whether, after entry of a judgment of foreclosure and sale with respect to the debtors' principal residence, the bankruptcy court should confirm a Chapter 13 plan which proposes to pay the judgment creditor, the mortgagee, over the life of the plan less than the face amount of the judgment.

## THE FACTS

The relevant facts in this case are not in dispute and may be briefly stated.

Audrey and Godfrey Pearson purchased their home at 8 Gusta Lane, Roosevelt, New York, in June, 1978 by paying $5,000 in cash and borrowing $36,800 from the Vanguard Holding Corporation ("Vanguard"). Vanguard was given a purchase money security interest in the property. The debtors stopped making payments on the mortgage in January, 1979—only seven months after they bought the property. Thereafter, Vanguard elected to accelerate the mortgage and proceed to obtain by default a judgment of foreclosure and sale which was entered in the Nassau County Supreme Court on March 20, 1980. A public auction of the property, scheduled for May 16, 1980, was arrested by the filing of a Chapter 13 petition on May 15, 1980.

Under the plan filed by the petitioners, $225 per month is to be paid the Chapter 13 trustee for 36 months, out of which the arrearages under the mortgage are to be satisfied. Current payments under the mortgage are to be made by the petitioners directly to the mortgagee.

Beneficial Finance Company of New York, Inc. ("Beneficial") is the only creditor other than Vanguard listed by the Pearsons on their petition. Beneficial is described as a creditor holding an unsecured claim in the amount of $2,405.

Under the plan, payments to the trustee, in addition to curing the arrearages on the Pearsons' mortgage, are to go to pay attorney's fees, priority debts (the petition lists none), the Chapter 13 trustee's fee, and other costs of administration, and a 1 percent first and final dividend to be paid the unsecured creditor.

Vanguard has objected to confirmation of the plan on the ground that its mortgage merged into the judgment of foreclosure and sale, rendered by the New York State Supreme Court, Nassau County, on March 20, 1980, and that the debtors can therefore no longer cure the default under the mort-gage. It has filed a proof of claim in the amount of $45,185.96 and a written objection to the plan.

■ For reasons independent of Vanguard's objection, the debtors' present plan cannot be confirmed. The New York State Tax Commission, although not listed in the debtors' petition as a creditor, has filed a proof of claim in the amount of $517.54 for unpaid income taxes for the years 1976 and 1977. This is a priority obligation which must be paid ahead of other debts. 11 U.S.C. § 507. If the amount of the tax claim is deducted from the total to be paid under the plan, the remainder is insufficient to satisfy even the arrearages under Vanguard's mortgage.

In addition, Beneficial has filed a claim in which it describes itself as a secured creditor owed $2,118.19. The debtors' plan does not propose to pay the amount required by its secured status, and no objection to Beneficial's claim has been filed.

However, since the time the debtors' plan was filed, the Pearsons' take-home pay has increased by $1,100 per month.[1] This would give them the means to fund a plan which would adequately provide for payment of the claims filed by the State Tax Commission and Beneficial, as well as the arrearages which were due and owing Vanguard prior to the entry of Vanguard's judgment. Accordingly, it seems to be in the best interests of all concerned, and most economical of judicial time, to deal immediately with the issue raised by Vanguard, rather than delay until a plan otherwise satisfying the Code is submitted.

## DISCUSSION

■ The question raised by Vanguard's objection to the Pearsons' plan is a recurring one. Many homeowners in this period of accelerating costs have found themselves unable to keep up with the mortgage payments on their homes. With the passage of

---

1. Mr. Pearson has taken a second job and Mrs. Pearson has become employed full-time.

the Bankruptcy Reform Act of 1978[2] (the Bankruptcy Code), many of them are trying to save their residences through filing for relief under Chapter 13 of the Code. That chapter is designed to permit a person with regular income, generally a wage earner, but also a self-employed individual, or even a person living on publicly-financed benefits,[3] to rearrange his obligations so that they can be met while under the sheltering umbrella of the bankruptcy court.[4]

■ As is clear from its organization, Chapter 13 was intended to provide the wage earner with the same powers to reorganize his debts as large businesses have been enjoying under former Chapters X and XI of the Bankruptcy Act of 1898, and now under Chapter 11 of the new Bankruptcy Code. However, in sharp contrast with the elaborate provisions of Chapter 11, Chapter 13 is a relatively skeletal statute.[5]

Under Chapter 13, a debtor retains his property (§ 1306(b)), but must propose a plan providing for periodic payments to a court-appointed trustee (§ 1322(a)). The provisions required to be included in a plan are few. The plan must provide for full payment of all claims entitled to priority (§ 1322(a)(2)), and if the plan classifies claims, it must treat all claims within a class the same (§ 1322(a)(3)). The debtor is given great flexibility with respect to provisions which he may include in a plan. The permissible features of a Chapter 13 plan are listed in § 1322(b). The relevant paragraphs of that section provide that a plan may:

"(2) modify the rights of holders of secured claims *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims;

"(3) provide for the curing or waiving of any default;

\*　　\*　　\*　　\*　　\*　　\*

"(5) notwithstanding paragraph (2) of this subsection, provide for *the curing of any default within a reasonable time* and maintenance of payments while the case is pending on any unsecured claim or *secured claim on which the last payment is due after the date on which the final payment under the plan is due* ;

\*　　\*　　\*　　\*　　\*　　\*

"(10) include any other appropriate provision not inconsistent with this title." (Emphasis supplied.)

■ Section 1322(b)(5) was specifically intended by Congress to apply to mortgage debts. House Report No. 95–595, 95th Cong., 1st Sess. 429 (1977). *See also* 124 Cong.Rec.H. 11,106 (Sept. 28, 1978); S.17,-423 (Oct. 6, 1978).

2. The Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549 (Bankruptcy Code), was enacted on November 6, 1978 and is applicable to all bankruptcy cases commenced subsequent to September 30, 1979.

3. Section 109(e) of the Bankruptcy Code, 11 U.S.C. § 109(e), provides that any "individual with regular income is eligible to file under Chapter 13." 11 U.S.C. § 101(24) defines an "individual with regular income" as an individual "whose income is sufficiently stable and regular to enable such individual to make payments under a plan."

Congress accepted the recommendation of the Commission on the Bankruptcy Laws that Chapter 13 "be made available to any debtor who can propose and expect reasonably to comply with an undertaking to pay a prescribed amount periodically out of an anticipated regular income." Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No.93–137, 93d Cong., 1st Sess. (Pt. I), p. 165 (1973). *See* H.R.No.95–595, 95th Cong., 1st Sess. 119 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6080 ("Many self-employed individuals from the house painter and Maine wormdigger, to the barber or independent carpenter, will be permitted to use chapter 13").

4. Immediately upon the filing of a Chapter 13 petition, all actions against the debtor, the debtor's property, and any co-debtor are automatically stayed. 11 U.S.C. §§ 362(a), 1301(a).

5. As this Court has had occasion to note in another context, "Chapter 13 was part of a wholesale revision of the bankruptcy laws in which a number of separate objectives were independently pursued, resulting in a statute, the separate parts of which mesh only imperfectly." *In re Yee, Coye*, 7 B.R. 747 (Bkrtcy.E.D.N.Y.1980).

■ To confirm a Chapter 13 plan, the bankruptcy court must make various findings, including that the plan satisfies the provisions of the Bankruptcy Code; that it has been proposed in "good faith"; that it is feasible; that it is in the best interests of creditors; and that it treats holders of secured claims in one of three acceptable ways (§ 1325(a)).

Chapter 13 is being invoked by mortgagors at every stage of default: those who are only a few months in default; those whose mortgages have been accelerated, pursuant to contractual provisions authorizing such acceleration; those against whom judgments of foreclosure have been entered; and those whose property has already been sold.

In all these situations, the plan submitted by the debtor, like that proposed herein, customarily provides that payments adequate to satisfy the arrearages on the mortgage will be made to the Chapter 13 trustee, over the life of the plan, and at the same time the current payments called for by the mortgage will be made directly to the mortgagee. Where the financing institution involved is agreeable to the plan—and many are—no problem arises. However, in other cases, as in the instant one, the mortgagee objects. The issue which then confronts the bankruptcy court is whether the court may, nevertheless, accord the debtor the relief he seeks.

■ There is no division among the bankruptcy courts as to the results to be reached at either end of the spectrum. Thus, there is agreement that after a sale, the debtor cannot recover his home through filing under Chapter 13. *In re Butchman*, 4 B.R. 379, 6 B.C.D. 403 (Bkrtcy.S.D.N.Y. 1980). Equally, where no more has occurred than that the mortgagor has defaulted, but the mortgagee has not yet exercised the right to accelerate the total debt, assuming such right exists, the debtor may utilize Chapter 13 to cure the default (§ 1322(b)(5)). *In re Johnson*, 6 B.R. 34, 6 B.C.D. 579 (Bkrtcy.N.D.Ill.1980); *In re Hartford*, 7 B.R. 914, 7 B.C.D. 145 (Bkrtcy. D.Maine 1981).

There is uncertainty, however, on the correct result in the case where, as in this case, a judgment of foreclosure and sale has been entered, but the property has not yet been sold.

Outside the Eastern District of New York, two courts have held after a judgment of foreclosure, or its equivalent, the secured creditor is entitled to payment of the full amount of the mortgaged debt, not simply arrearages. *In re Coleman*, 5 B.R. 812 (W.D.Ky.1980); *In re Robertson*, 4 B.R. 213 (Bkrtcy.D.Colo.1980). Other courts have indicated that satisfaction of the amount in default may be sufficient. *United Companies Financial Corp. v. Brantley*, 6 B.R. 179, 6 B.C.D. 932 (Bkrtcy.Fla.1980); *In re Breuer*, 4 B.R. 499, 1 C.B.C.2d 712 (Bkrtcy.S.D.N.Y.1980).

In this District, one bankruptcy judge has concluded that acceleration of the entire mortgage debt by the creditor will by itself cut off the "right to cure a mortgage default under a Chapter 13 repayment plan as provided in Section 1322(b)(5) of the Code, 11 U.S.C. § 1322(b)(5)." *In re LaPaglia*, 8 B.R. 937 (B.C.E.D.N.Y.1981). This conclusion is based on the specific language of § 1322(b)(5), which describes the type of indebtedness covered as a claim on which "the last payment is due after the date on which the final payment under the plan is due." Applying New York State law, Judge Price concluded that when a debt is accelerated, the debt is changed from "one payable at some time in the future and in installments, to one immediately payable in full."

However, another bankruptcy judge in this District would permit cure even after acceleration up to the time of actual sale pursuant to a judgment of foreclosure. *In re Taddeo*, 9 B.R. 299 (B.C.E.D.N.Y.1981). Judge Parente noted that the provisions of Chapter 13 should be read *in pari materia* with the provisions of Chapter 11, and that since "Chapter 11 extends the right of post acceleration cure to the business debtor, *a fortiori*, the generally more liberal Chapter 13 provisions should do the same for the consumer debtor." He found implicit in the

language of Section 1322(b)(5) "the right of the Chapter 13 debtor, at any time prior to actual sale of the foreclosed property, to attempt cure of the pre-acceleration defaults and to reinstate the original mortgage payment schedule."

It is clear from the very different conclusions reached by these conscientious jurists that the question of the extent of the relief available under Chapter 13 to mortgagees in default is a difficult one on which guidance from a higher court is urgently needed.

Since what is involved here is a question of statutory construction, the task of the Court is the ascertainment of the legislative intent. There is very little, however, either in the language of the statute, or in its legislative history, that throws any light on the application of Chapter 13 to the complexities of mortgage foreclosure proceedings.

That Congress intended to provide a method for a small debtor to cure defaults on a mortgage on his home is clear; what is unclear is whether such method can be used when the default has resulted in acceleration of the total amount due, or, as in this case, in a final judgment.

■■■ Under state law, after judgment has been entered, following acceleration, the entire amount is due, not simply the amount originally in default. If a mortgagor wishes to redeem the property, he must tender the full amount of the judgment. *Belsid Holding Corp. v. Dahm*, 12 A.D.2d 499, 207 N.Y.S.2d 91 (2d Dep't 1960). As between the parties, the judgment is "conclusive as to the amount of the mortgagee's lien on the premises." *Grady v. Utica Mutual Ins. Co.*, 69 A.D.2d 668, 677, 419 N.Y. S.2d 565, 571 (2d Dep't 1979).

To hold that, nevertheless, the bankruptcy court could approve a Chapter 13 plan that paid out over the life of the plan only the arrearages, not the full judgment, would create enormous uncertainty for all concerned—the mortgagor, the mortgagee, and the courts.

What would be the status of an unsatisfied judgment when the Chapter 13 plan terminated after three or five years, and the jurisdiction of the bankruptcy court ended? Could the mortgagee then seek enforcement of his judgment? If not, why not, since the judgment had never been satisfied? True, the Chapter 13 plan had cured arrearages, but it had not paid off the judgment. It would be up to the state courts to decide to what extent the judgment survived. How this would be done procedurally is unclear. Equally unclear is what the result would be. Nor would the results necessarily be uniform. For a period of years, neither the debtors, nor the mortgagees, would know their rights.

The Code itself compounds this uncertainty. Before a court may confirm a Chapter 13 plan, it must find with respect to each allowed secured claim (if the holder of such claim has not accepted the plan or received back the property securing the claim) that two conditions have been met (§ 1325(a)(5)(B)). One is that the holder of such claim retain his lien (§ 1325(a)(5)(B)(i)). What is the lien securing the mortgagee's claim which he retains, and which survives completion of the Chapter 13 plan where a judgment has been entered? If the mortgagee's lien is his judgment, then the property which vests in the debtor upon confirmation of the plan under § 1327 is subject to the outstanding state judgment of foreclosure. If so, then the debtor has gained nothing from the sacrifices he made to live up to his Chapter 13 plan.

The second condition imposed by § 1325(a)(5)(B) is that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is *not less than the allowed amount* of such claim" (Emphasis supplied).

As a practical matter, where a long-term indebtedness is involved, the "allowed amount" of the claim has generally been assumed to be whatever amount is required, in addition to current payments, to cure any default. But where a judgment has been entered, it is questionable whether the

bankruptcy court has any power to deem the "allowed amount" to be any less than the face amount of the judgment.

Clearly, the literal language of the statute does not go so far as to void valid state court judgments. It is one thing to authorize the curing of defaults, as does §§ 1322(b)(3) and (b)(5); it is another to suspend, or annul, a judgment. When Congress intended an impact on judgments, as, for example, in the automatic stay imposed by the filing of a petition under the Code, it made its intent clear. Section 362(a)(2) specifically stays the enforcement against the debtor or against the property of the estate "of a judgment obtained before the commencement of the case under this title." The absence of any similar language respecting judgments in Chapter 13 is some indication that Congress did not envisage the authority given in § 1322(b)(5) to cure defaults as extending to the undoing of a final judgment.

The debtors do not deny the validity of Vanguard's judgment. They do not claim it was procured by fraud. They cite no grounds that would support setting it aside.[6] The position of the debtors is, in essence, that Congress gave debtors the right to cure defaults on long-term indebtedness, that the principal type of long-term indebtedness owed by persons for whom Chapter 13 was written is a mortgage on their residence, and, therefore, such defaults can be cured, despite the entry of a judgment of foreclosure. They also argue that the provisions of the Bankruptcy Code, and Chapter 13 in particular, should be interpreted and applied liberally.

This Court agrees that Chapter 13 should be liberally interpreted, but in view of the serious implications for the home mortgage market of the interpretation urged by the debtors, a policy change of this magnitude should not be imputed to Congress, absent some clear expression of legislative intent. Permitting a debtor to reinstate the original terms of a defaulted mortgage after a judgment, providing only that it was done prior to sale, would necessarily affect adversely the home mortgage market by making such mortgages less attractive to investors. These are serious policy considerations. Had Congress intended a policy change of this magnitude, with all the complications such a change would produce, it is reasonable to assume that Congress would have used language appropriate to that end. It did not.

Accordingly, it is the conclusion of this Court that after a judgment of foreclosure has been entered and a secured claim based on that judgment has been filed, a Chapter 13 plan, in order to satisfy the Code, must provide for the payment of that judgment *in full* over the life of the plan. Section 1325(a)(5)(B) is not satisfied simply by paying the arrearages that trigger the judgment. It is the judgment, not the mortgage, that now defines the lien of the judgment creditor.

Chapter 13 still provides the defaulting mortgagor with substantial benefits. Filing a Chapter 13 petition still arrests execution on the judgment; a stay will permit the debtor to secure refinancing, or work things out with the mortgagee, but the mortgagor cannot use Chapter 13 to drain an outstanding state court judgment of its vitality.[7]

---

**6.** Under New York State law, a judgment may be set aside or vacated for a number of reasons. A state court has inherent power to open judgments taken against a party by reason of fraud, or defendant's "mistake, inadvertence, surprise or excusable neglect" if the defendant can show the existence of a meritorious defense. *Ladd v. Stevenson*, 112 N.Y. 325, 332, 19 N.E. 842 (1889). *See Hammerman v. Ferguson*, 50 A.D.2d 853, 376 N.Y.S.2d 606, *appeal dismissed*, 39 N.Y.2d 797, 385 N.Y.S.2d 757, 351 N.E.2d 424 (1976); *Poughkeepsie Sav.*

*Bank v. Extension Dvpt. Co.*, 154 App.Div. 305, 138 N.Y.S. 939 (2d Dep't 1912); CPLR 5015(a).

**7.** In an appropriate case, the stay may be continued in effect against the judgment creditor for a reasonable length of time if the debtor provides the judgment creditor with "adequate protection" of its interest in the property. *See* §§ 361, 362(a). However, there must be a reason independent of delaying the foreclosure proceeding to justify continuation of the stay. *See Hallenbeck v. Penn Mutual Life Ins. Co.*,

For the foregoing reasons, the Pearsons' plan cannot be confirmed because it does not provide for payment of Vanguard over the life of the plan equal to the amount of its judgment.

In addition, as already noted, the debtors' plan cannot be confirmed because it does not adequately provide for the claims filed by the New York State Tax Commission and Beneficial.

Hughes Hubbard & Reed, New York City, for trustee; James B. Kobak and Emelio Cueto, New York City, of counsel.

Nathan Krantman, Harrisburg, Pa., claimant.

323 F.2d 566, 572 (4th Cir. 1963); *In re Cassidy*, 401 F.Supp. 757 (E.D.N.Y.1975).