In re Nicholas & Virginia MAIORINO, Debtors.

Bankruptcy No. 5–81–00273.

United States Bankruptcy Court, D. Connecticut.

Nov. 16, 1981.

Joseph Neiman, Newington, Conn., trustee.

James G. O'Rourke, Stratford, Conn., for debtors.

John E. Donegan, Branford, Conn., for Branford Sav. Bank.

## MEMORANDUM AND ORDER ON CONFIRMATION OF CHAPTER 13 PLAN

[Curing default—11 U.S.C. § 1322(b)(5)]

ALAN H. W. SHIFF, Bankruptcy Judge.

### I

### BACKGROUND AND FACTS

The debtors filed a plan for the adjustment of debts under Chapter 13 of the Bankruptcy Reform Act of 1978 which, *inter alia*, provided for the curing of a default on the debtors' residential mortgage, pursuant to 11 U.S.C. § 1322(b)(5).[1] The mortgagee, Branford Savings Bank (Branford), has objected to confirmation of the plan on the basis that it had obtained a judgment of strict foreclosure in a Connecticut state court prior to the filing of the petition in this case, the mortgage merged into the judgment, and Code § 1322(b)(5) does not permit the curing of a judgment of strict foreclosure which extinguished the mortgage. The facts relevant to a resolution of the issue raised by this controversy are undisputed and are as follows:

The debtors purchased their home in 1969 with mortgage financing from Branford. The mortgage was refinanced on December 12, 1975 by a new mortgage deed and note in the amount of $25,000.00 to be paid in installments over 30 years at the rate of nine percent per annum on the unpaid balance. In November 1979, the debtors defaulted on the mortgage with Branford. At the time the petition was filed, the amount of Branford's claim, as listed in the debtors' Chapter 13 statement, was $26,096.97.

In May, 1980, Branford initiated a foreclosure action in a Connecticut state court. A judgment of strict foreclosure was entered on July 28, 1980 and a law day of December 8, 1980 was ordered for the debtors. The judgment of strict foreclosure was reopened on December 1, 1980, and the law day was extended to March 17, 1981.

On March 13, 1981, the debtors filed for relief under Chapter 13 of the Bankruptcy Reform Act of 1978 and listed Branford as a secured creditor. As noted above, Branford has objected to the proposed plan which provides for payment of the arrearage due Branford and reinstatement of the foreclosed mortgage.

1. 11 U.S.C. § 1322(b)
  ... the plan may—
    (2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence ...

    (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due

The issue presented is whether a Chapter 13 debtor may cure a default on a residential mortgage where, prior to the commencement of the bankruptcy case, a Connecticut state court had entered a judgment of strict foreclosure, but the law day had not yet passed.

## II

### DISCUSSION

The family residence is unquestionably the prime concern of many Chapter 13 debtors. Beyond its significance in economic terms, a debtor's affinity to his home as a place of refuge, comfort and pride cannot be overstated. Recognizing the significance of the debtor's home in the fresh start provided under a Chapter 13 debt adjustment plan, Congress granted debtors the right to cure, within a reasonable time, defaults on claims secured by security instruments (such as mortgages) on residential property.[2]

The controversy in the instant case centers on whether the right to cure still exists after a judgment of strict foreclosure has entered but before title has passed. In order to resolve this issue, the following two questions must be addressed: 1) What is the effect of a Connecticut judgment of strict foreclosure upon the rights of the parties? 2) If a judgment of strict foreclosure precludes the right to reinstate the mortgage, should the state court judgment be voided by the bankruptcy court as being in conflict with Code § 1322(b)(5)?

### (1)

#### Judgment of Strict Foreclosure

█ Under Connecticut law, a judgment of strict foreclosure fixes the amount due under the mortgage, orders its payment by a certain date (law day), and provides that if payment is not timely made, the mortgagor's equity of redemption will be extinguished.[3] Although a judgment of strict foreclosure may be opened for cause shown, pursuant to the General Statutes of Connecticut § 49–15,[4] there is no authority for opening a judgment of strict foreclosure merely on the ground that the debtor desires to cure the default and renew mortgage payments.

In the instant case, the debtors do not claim that the judgment of strict foreclosure rendered in the state court is invalid under Connecticut law. They contend, however, that they are entitled to cure under Code § 1322(b)(5) until they no longer have any rights to the property they seek to protect. See In re Taddeo, 9 B.R. 299, 7 B.C.D. 422 (Bkrtcy.E.D.N.Y.1981); United Companies Financial Corporation v. Brantley, 6 B.R. 178, 6 B.C.D. 932 (Bkrtcy.N.D. Fla.1980).

Branford, on the other hand, claims that the rights of the parties are determined by state law which provides that when a default is followed by a judgment of strict foreclosure, the mortgage is merged into the judgment leaving the debtors nothing more than the right to redeem by payment of the entire debt. Branford further argues that Code § 1322(b)(5) does not disturb that result. A similar position was taken by the bankruptcy court in this district in In re Canady, 9 B.R. 428, 7 B.C.D. 749 (1981). I find the reasoning set forth in Canady persuasive. The court stated:

The debtors cannot reactivate a mortgage that was already merged into a judgment of strict foreclosure before the

---

2. See 124 Cong.Rec. S17,423 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

3. See Morici v. Jarvie, 137 Conn. 97, 103, 75 A.2d 47, 50–51 (1950) involving the foreclosure of mechanics' liens, in which the court stated: In a foreclosure action, the judgment must either find the issues for the defendant or determine the amount of the debt, direct a foreclosure and fix the law days.

4. Conn.Gen.Stat. § 49–15 (1981) *Opening of judgments of foreclosure.* Any judgment foreclosing the title to real estate by strict foreclosure may, at the discretion of the court rendering same, upon the written motion of any person having an interest therein, and for cause shown, be opened and modified, upon such terms as to costs as the court deems reasonable; but no such judgment shall be opened after the title has become absolute in any encumbrancer. (emphasis added)

debtors filed their Chapter 13 petition
. . .

At the time that the debtors filed their Chapter 13 petition, the plaintiff's secured claim had been merged into a judgment of foreclosure under the imprimatur of the Connecticut State Court. Accordingly, the entire judgment lien must be paid under the plan. This court cannot resurrect a mortgage that has been laid to final rest by a state court. *In re Canady, supra*, 9 B.R. at 430, 7 B.C.D. at 750.

The judgment of strict foreclosure, then, replaces the mortgage by establishing new and different rights, leaving the debtor without a right to reinstate the superseded mortgage. Thus, cure is no longer possible as a result of the operation of Connecticut law.

### (2)

### Applicable Law

Having established the effect of a judgment of strict foreclosure upon the rights of the parties under state law, the question remains as to whether such rights should yield to an overriding policy established under the Bankruptcy Code.

■ The debtors argue that the underlying goals of a fresh start and the uniform application of the Bankruptcy Code are paramount federal interests. In accordance with these goals, the debtors, as mentioned above, urge that cure be allowed until they are absolutely divested of all rights in their property. The United States Supreme Court, however, in *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) observed:

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

Moreover, the Supreme Court in *Butner* recognized that often the uniformity desired is the uniform application of law between the bankruptcy court and the state in which it sits. *Butner v. United States, supra*, at 55, 99 S.Ct. at 918. Mere variation in result among the states is not inconsistent with the constitutional grant of authority to Congress to establish uniform bankruptcy laws. *See Stellwagen v. Clum*, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1917).

The answer to the question of whether state determined rights should yield to Bankruptcy Code policy, in the context of this case, must ultimately be found in the language of Chapter 13 and specifically Code § 1322(b)(5).

■ While it may be argued that the parties to a contract are entitled to the benefit of their bargain, contracts will not be enforced to the extent that they conflict with the Bankruptcy Code.[5] The same rule applies with respect to state statutes that conflict with the Bankruptcy Code.[6] Bankruptcy Code § 1322(b)(5) contains no provision that explicitly affects state court judgments. Thus, unlike acceleration clauses which are potentially in sharp conflict with Code § 1322(b)(5), recognition of strict foreclosure judgments does not undermine that section.

■ Mortgage instruments are commonly armed with acceleration clauses which, at the mortgagee's option, could cause the entire debt to become due and therefore preclude cure. In determining the validity of such clauses, the key consideration is as follows: Is the activity in question, i. e. acceleration of a debt, in conflict with the specific language of the Bankruptcy Code? Code § 1322(b)(5) specifically permits "the curing of any default." To the extent that acceleration clauses nullify that section, they are invalid and will not be enforced.

The same consideration is utilized when the proposed activity involves the curing of a default which has been converted into a

---

**5.** *See, e. g.*, 11 U.S.C. § 541(c)(1)(B); 11 U.S.C. § 524(a).

**6.** *See* U.S.Const. art. I, § 8, cl. 4; U.S.Const. art. VI, cl. 2; *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

judgment of strict foreclosure. Accordingly, some bankruptcy courts have rejected attempts to cure defaults when a prepetition judgment had been rendered, noting that no language in Code § 1322(b)(5) impacts state court judgments. *See, e. g., In re Pearson*, 10 B.R. 189, 7 B.C.D. 567 (Bankr.Ct.E.D.N.Y.1981); *In re Canady, supra.*[7]

■ Congress chose to provide for the curing of defaults under Code § 1322(b)(5) not for the setting aside of state court judgments. If Congress intended to provide that relief, it could have done so with the application of appropriate language. Consequently, I find that there is no conflict between Branford's rights under the state court judgment and the provisions of Code § 1322(b)(5) and accordingly conclude that the default which has been converted into the judgment of strict foreclosure may not be cured under Code § 1322(b)(5).

### III

### CONCLUSION AND ORDER

It is undoubtedly true that any right read into the Bankruptcy Code which benefits a particular debtor furthers the rehabilitative purpose of the code with respect to that debtor. It is not as readily apparent, however, what effect such a reading would have on creditors, non-debtors, and those debtors who are not in a position to take advantage of the right, but such an effect cannot be ignored.

It is the responsibility of courts to construe, not reconstruct, the law. If denying Chapter 13 debtors the right to reinstate mortgages after a judgment of strict foreclosure is harsh, it is for Congress to provide an adequate remedy. In the exercise of judicial restraint, this court should not and will not rewrite the law. Accordingly, for the reasons set forth, Branford's objection to the plan is sustained, and confirmation of the debtor's plan is denied.

This decision renders moot Branford's objection based on the proposed time to cure the default.

---

**7.** The court in *Pearson* contrasted Code § 1322(b)(5) with Code § 362(a)(2) in which Congress made clear its intention to affect state judgments. Similarly, the court in *Cana-* dy contrasted Code § 1322(b)(5) with Code § 1124(2)(B). *But see In re Taddeo, supra*, in which the court relied, in part, on § 1124(2)(B) in allowing cure pursuant to § 1322.