**In the Matter of Frank J. VALENTE, III, Annette M. Valente, d/b/a Tri-City Cleaners, d/b/a Valet Maintenance, Debtors.**

**Bankruptcy No. 2–82–00070.**

United States Bankruptcy Court,
D. Connecticut.

Dec. 16, 1982.

in satisfaction of the debt. I further concluded that nothing in the Bankruptcy Code allowed a bankruptcy court to undo the judgment to permit the debtors to pay to the noteholder the delinquent installments and reinstate and de-accelerate the original mortgage. Having now filed a chapter 11 case, the debtors claim that the relevant provisions of chapter 11 should be construed to permit such reinstatement of their mortgage, thus arguing for a different result under chapter 11 than under chapter 13.

## II.

## BACKGROUND

The parties are in agreement about the factual background to the present proceeding. The debtors, Frank J. Valente and Annette M. Valente, defaulted in June, 1980 on their monthly mortgage payments due the Savings Bank of Rockville (bank). The bank declared a default, accelerated the mortgage, and on October 28, 1980, commenced a foreclosure action in the Connecticut Superior Court. The bank's first mortgage, dated October 12, 1973, and in the original principal amount of $30,000.00, covers the debtors' home located at 95 Anderson Road in Tolland, Connecticut (property). The debtors were represented by counsel in the state foreclosure action. On March 31, 1981, the state court entered a judgment of strict foreclosure finding the debt due the bank, including costs, to be $31,377.49 and setting September 1, 1981 as the date by which the debtors must satisfy the debt or forever be barred of their right to redeem the mortgage. On the debtors' motion, the state court reopened the judgment of strict foreclosure on April 27, 1981, ordered a foreclosure by sale, and set September 19, 1981 as the sale date. On August 12, 1981, the debtors filed a chapter 13 petition. The debtors' chapter 13 plan sought to cure the mortgage default by paying the arrearages and to de-accelerate the mortgage. The bank objected to confirmation of the plan. On November 30, 1981, this court sustained the bank's objection and denied confirmation of the debtors' plan. The debtors then voluntarily dismissed their chapter 13 case

Richard M. Leibert, Hartford, Conn., for debtors.

Charles A. Maglieri, of Pigeon & Gnutti, Stafford Springs, Conn., for Savings Bank of Rockville, creditor.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

## I.

## ISSUE

In this proceeding, the parties are at issue over the debtors' ability, through a chapter 11 plan, to cure a default and reinstate and de-accelerate a mortgage, pursuant to 11 U.S.C. § 1124(2), after a final judgment of foreclosure by sale has entered in state court but a sale has not taken place. The debtors previously had attempted to obtain such a mortgage reinstatement through a chapter 13 plan, but I denied confirmation of the plan on November 30, 1981. In that ruling, I concluded that a state court judgment decreeing foreclosure is a final judgment which determines the debt and orders it paid by a date certain failing which the property securing the debt is sold or applied

and on January 28, 1982, filed the present chapter 11 petition. Article 2.2 of the debtors' amended plan of reorganization, dated June 18, 1982, classifies the bank's claim as "not impaired" under the plan and provides that pursuant to 11 U.S.C. § 1124(2), the debtors will pay "existing arrearages and additional compensation for damages incurred by said creditor as a result of its reasonable reliance on its contractual rights or applicable state law" over a 12-month period in monthly installments and that the "[d]ebtors shall in addition to curing said arrearages and damages, pay to said creditor its regular monthly mortgage payment."[1] The bank has objected to confirmation of the plan and the characterization of its claim as "not impaired." The bank contends that the mortgage on the debtors' property is now a judgment debt not susceptible to cure of default and reinstatement and de-acceleration of the mortgage through the use of a chapter 11 plan.

### III.

### DISCUSSION

### A.

The issue presented in this proceeding, that is, under what circumstances may a debtor cure a default and de-accelerate a mortgage, has generated much discussion and no small amount of disagreement, particularly in plans proposed under chapter 13.[2] In light of the Second Circuit Court of Appeals' recent decision in *Taddeo v. Di Pierro* (*In re Taddeo*), 685 F.2d 24 (2nd Cir.1982), it is necessary to reexamine the reasoning of my prior ruling of November

18, 1981 concerning curing defaults and de-accelerating mortgages under chapter 13 plans before attempting to apply that ruling to like attempts to cure defaults and de-accelerate mortgages under chapter 11. The propriety of discussing the applicable provisions of both chapters in this proceeding stems from the conclusion of the court of appeals that " 'curing a default' in Chapter 11 means the same thing as it does in Chapters 7 or 13: the event of default is remedied and the consequences nullified." *Id.* at 29.

### B.

Under 11 U.S.C. § 1322(b), a chapter 13 plan may

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . .

In *Taddeo,* the mortgagee had, after default, accelerated the mortgage, declared its balance due immediately and commenced a foreclosure action in a New York state court. After preliminary proceedings, in-

1. The debtors' disclosure statement claims that the property is worth $96,000.00 and that there are eight encumbrances on the property, in addition to the bank's lien, totaling $44,124.00. The debtors operate a dry cleaning business, have no unsecured creditors, and the only claimed impaired creditor is one holding a second mortgage on the property.

2. As summarized in one opinion:
 case law under 11 U.S.C. § 1322(b) indicates that the courts are in disagreement on the question of whether the Bankruptcy Code deviates from state law in allowing a post-default cure. Some courts have held where a

mortgage by its terms permitted the creditor to accelerate the debt, (b)(5) does not apply. Other courts have similarly denied the use of (b)(5) where a state court judgment of foreclosure had been obtained before filing or where a foreclosure sale had been held.
On the other hand, a number of courts have read (b)(5) as unaffected by certain state laws limiting cure.
*In re Thompson,* 17 B.R. 748, 751, 8 B.C.D. 1040, 1041–42 (Bkrtcy.Ct., W.D.Mich.1982) (footnotes omitted). *See also* Beck, *The Plight of the Defaulting Mortgagor,* 15 Ind.L.Rev. 561 (1982).

cluding a "summary judgment" and determination of the debt, but before the mortgagee had obtained a final judgment of foreclosure and sale, the mortgagors filed their chapter 13 petition. The court of appeals held that "§ 1322(b)(5) was intended to permit the cure and de-acceleration of secured long-term residential debt accelerated prior to the filing of a Chapter 13 petition." *Id.* at 27. The court reasoned that the power to cure comprehends the power to de-accelerate; that curing a default "commonly means taking care of the triggering event and returning to pre-default conditions"; and that a state law[3] which allows acceleration upon default "must fall before the Bankruptcy Code." *Id.* at 26–29. It thereupon sustained the lower court's conclusion that the debtors could cure the default by paying the mortgage arrearage and reinstate the monthly payments despite the mortgagee's acceleration of the mortgage.

The *Taddeo* opinion dealt only with the right of a debtor prior to final judgment of foreclosure and sale to cure defaults and de-accelerate mortgages where the mortgagee has invoked state law permitting acceleration. It offered no guidance as to what effect a final judgment of foreclosure would have on a debtor's ability to reinstate a mortgage under a chapter 13 plan. However, in support of other issues, the court of appeals did cite two lower court opinions which specifically hold that once a final entry of foreclosure has entered, a debtor may no longer cure defaults and seek to reinstate a mortgage. *In re Davis,* 15 B.R. 22, 24 (Bkrtcy.Ct., D.Kan.), *aff'd,* 16 B.R. 473 (D.C.D.Ct., D.Kan.1981); *In re Pearson,*

10 B.R. 189, 195, 7 B.C.D. 567, 570 (Bkrtcy. Ct., E.D.N.Y.1981).[4]

### C.

▮ Under Connecticut law, a judgment of strict foreclosure or foreclosure by sale fixes the amount due under the mortgage, orders its payment by a certain day or the date of sale, and provides that if payment is not made, the mortgagor's equity of redemption will be extinguished. *Brand v. Woolson,* 120 Conn. 211, 180 A. 293 (1935). Besides my ruling of November 30, 1981, other bankruptcy court decisions from this district have concluded that once a foreclosure action has gone to judgment, the mortgage is merged into the judgment leaving the mortgagor with only the right to redeem by payment of the entire debt. *In re Maiorino,* 15 B.R. 254 (Bkrtcy.Ct., D.Conn. 1981); *In re Canady,* 9 B.R. 428, 7 B.C.D. 749 (Bkrtcy.Ct., D.Conn.1981). These decisions held that the provisions of chapter 13, specifically § 1322(b)(5), cannot resurrect or de-accelerate a mortgage once merged into a judgment of foreclosure. The question is whether the court of appeals' decision in *Taddeo* casts doubt upon the correctness of these holdings.

▮ After reconsideration, I do not find that the *Taddeo* decision undermines the proposition that a mortgage, once merged into a final judgment of foreclosure, is no longer susceptible to cure of default and de-acceleration through a chapter 13 plan. As noted, *Taddeo* deals with a situation where a mortgagee has accelerated the debt after default, started a state court foreclosure action, but not yet obtained final judgment. The court of appeals

---

**3.** The state law referred to was N.Y. Real Prop. § 258 Schedule M (McKinney 1968), which gives the mortgagee the option to accelerate after a default in mortgage payments.

**4.** In affirming the bankruptcy court decision in *Davis,* the district court indicated that "[t]here are strong policy considerations which would support a decision not to allow a default to be cured once a creditor has obtained a foreclosure judgment in state court," 16 B.R. at 475, and quoted the following language from the *In re Pearson* decision:

> Permitting a debtor to reinstate the original terms of a defaulted mortgage after a judgment, providing only that it was done prior to sale, would necessarily affect adversely the home mortgage market by making such mortgages less attractive to investors. These are serious policy considerations. Had Congress intended a policy change of this magnitude, with all the complications such a change would produce, it is reasonable to assume that Congress would have used language appropriate to that end. It did not.
> 10 B.R. at 195, 7 B.C.D. at 570.

buttressed its conclusion to permit cure of the default after acceleration by the mortgagee by referring to a policy consideration of avoiding "unseemly and wasteful races to the courthouse." *Id.* at 27. The court stated:

> [T]hese would be races in which mortgagees possess an unwarranted and likely insurmountable advantage: wage earners seldom will possess the sophistication in bankruptcy matters that financial institutions do, and often will not have retained counsel in time for counsel to do much good. In contrast, permitting debtors in the Taddeos' position to de-accelerate by payment of the arrearages will encourage parties to negotiate in good faith rather than having to fear that the mortgagee will tip the balance irrevocably by accelerating or that the debtor may prevent or at least long postpone this by filing a chapter 13 petition.

These considerations have considerably less significance when dealing with a state court judgment ordering foreclosure after there has been ample opportunity for the debtors to be heard. Upon the filing of a Connecticut foreclosure action, as in the instant matter, debtors have adequate time to secure counsel. Further, there is nothing automatic under Connecticut foreclosure law allowing a mortgagee to secure a foreclosure judgment. A Connecticut trial court, on equitable considerations and principles, can withhold foreclosure despite the existence of defaults. *Hamm v. Taylor,* 180 Conn. 491, 429 A.2d 946 (1980).

I believe had Congress intended a federal bankruptcy court under the Bankruptcy Reform Act of 1978 to exercise the significant power of undoing state court final judgments in foreclosure matters, it would have specifically so stated. For example, former § 75 of the Bankruptcy Act of 1898 provided certain composition and extension relief in mortgage foreclosures to farmers, and § 75(n) stated in pertinent part:

> The filing of a petition . . . praying for relief under [this] section . . . shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, or any equity or right in any such property, including, among others, . . . the right or the equity of redemption where the period of redemption has not or had not expired, or where a deed of trust has been given as security, or where the sale has not or had not been confirmed, or where deed had not been delivered, at the time of filing the petition.

> In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, or where the right under a deed of trust has not or had not become absolute, or where the sale has not or had not been confirmed, or where deed had not been delivered, the period of redemption shall be extended or the confirmation of sale withheld for the period necessary for the purpose of carrying out the provisions of this section.

In *State Bank of Hardinsburg v. Brown,* 317 U.S. 135, 63 S.Ct. 128, 87 L.Ed. 140 (1942), the Supreme Court construed this section and held that where the redemption period under state law had expired, the rights of a mortgagor-debtor were cut off, and § 75 did not bring the property within the jurisdiction of the bankruptcy court. The Court observed that:

> A fair reading of the entire section indicates a clear intent to extend the bankruptcy jurisdiction over all property which still remains subject to redemption under state law at the time of filing the petition. The section did not evidence any intent on the part of Congress to bring back into the bankruptcy proceeding property which was once owned by a bankrupt and as to which his ownership and interest had been extinguished, unless such intent can be drawn from the provisions qualifying the general words of the section. We think that if Congress intended that a bankruptcy might reach back into the past and bring under the court's jurisdiction a former interest in property, which, under state law, had irrevocably passed to a third person, it

would have so stated in terms too clear to leave any doubt.

*Id.* at 138–39, 63 S.Ct. at 130–31. Like reasoning leads me to conclude that Congress would not have left doubtful the power of the bankruptcy court to undo state court final foreclosure judgments.[5]

### D.

The relevant provisions of 11 U.S.C. § 1124 provide that a class of claims is impaired under a chapter 11 plan unless

> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
>
> > (A) cures any such default, other than a default of a kind specified in section 365(b)(2) of this title . . .
> >
> > (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
> >
> > (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
> >
> > (D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest
> > . . . .

Unfortunately, the legislative history of this provision is scanty. In discussing the nature of an unimpaired claim, the Senate Report indicates that:

> [A] claim or interest is unimpaired by curing the effect of a default and reinstating the original terms of an obligation when maturity was brought on or accelerated by the default. The intervention of bankruptcy and the defaults represent a temporary crisis which the plan

of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain.

S.Rep. No. 989, 95th Cong. 2nd Sess. 120 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, 5906. The foregoing suggests that the curing of default provision of chapter 11 is a remedy directed at a temporary crisis, and there is no indication that obligations reduced to judgment in a state court proceeding can be gone behind to reactivate an installment payment.

Case law considering this issue in chapter 11 is limited. In *In re Hewitt,* 16 B.R. 973, 8 B.C.D. 895 (Bkrtcy.Ct., D.Alaska 1982), on which the debtors heavily rely, the court dealt with a situation where the creditor-mortgagee had reduced its claim under a deed of trust to a judgment of foreclosure, but no sale had been held. In deciding that § 1124(2) applied equally as well to judgments of foreclosure as to situations where no judgment has been obtained, the court relied upon its reading of selected chapter 13 cases; the language of the Senate Report; the power of bankruptcy courts to look behind state court judgments to the nature of the claim on which the judgment was rendered; and the lack of practical finality which foreclosure judgments have under Alaska state law.

In opposition to the above is *In re Monroe Park,* 18 B.R. 790, 8 B.C.D. 1164 (Bkrtcy.Ct., D.Del.1982), where the issue was whether a mortgage default could be cured and the mortgage de-accelerated under § 1124 after a judgment of foreclosure had been obtained in state court. Adopting the reasoning of *In re Pearson, supra,* the court concluded that the mortgage had merged in the judgment and ceased to exist as an independent obligation. In effect, the court read the

---

**5.** The debtors concede, properly, that foreclosure judgments in Connecticut are final judgments. Debtors' Memorandum of Law at 5. The fact that under Connecticut procedure there may be supplemental judgments in foreclosure by sale proceedings, Conn.Gen.Stat.

§ 49–27 (1981), or that judgments of strict foreclosure may be reopened, Conn.Gen.Stat. § 49–15 (1981), does not change the foreclosure judgment to something other than a final judgment.

provisions of § 1124 to be *in pari materia* with § 1322(b).

 Given the court of appeals' holding in *Taddeo* that "curing a default" means the same in either chapter 11 or chapter 13, I conclude that the reasoning which prohibits a debtor from de-accelerating a mortgage under a chapter 13 plan once a final judgment of foreclosure is obtained applies as well to mortgages under chapter 11. Thus, once the mortgage foreclosure action has gone to final judgment, a debtor's plan must treat the mortgagee's claim as being impaired if the plan seeks to pay arrearages and reinstate the former monthly installment. This conclusion is motivated by an attempt to harmonize the kindred provisions of chapter 13 and chapter 11, the lack of any reference in the legislative history to § 1124 and the curing of defaults after obligations are reduced to judgment, and the absence of clear language to allow such a result in the Bankruptcy Code. As noted in *Pearson, supra,* the Bankruptcy Code still provides the foreclosure judgment debtor with substantial benefits. Filing a bankruptcy petition arrests execution on the foreclosure judgment, provides the debtor with and opportunity to secure refinancing or to come to an arrangement with the foreclosing mortgagee, or utilize the provisions of chapter 11 for dissenting classes of creditors. However, the debtor cannot use the Bankruptcy Code to undo a final and valid state court judgment in the format of curing a default.

## IV.

For the foregoing reasons, the bank's objection to confirmation of the debtors' plan must be sustained, and confirmation denied.