**In re Marvin Ray McKINNEY, Oreta Ann McKinney, Debtors.**

Civ. No. 87–1665–K.
Bankruptcy No. 87–11375.

United States District Court,
D. Kansas.

Jan. 21, 1988.

## MEMORANDUM DECISION

PATRICK F. KELLY, District Judge.

This is an appeal by Marvin Ray McKinney and Oreta Ann McKinney ("debtors") from an Order of the Bankruptcy Court denying confirmation of their Chapter 12 Plan and final judgment dismissing the case. Debtors contend that the Bankruptcy Court erred in so ruling. The Federal Land Bank of Wichita ("FLB") opposed the confirmation in the Bankruptcy Court and contends here that the Bankruptcy Plan was properly denied confirmation and the case was properly dismissed.

This case presents an issue of law. At issue is whether a Chapter 12 debtor can reinstate a promissory note and mortgage once the state court foreclosure action has proceeded to judgment and the mortgaged real estate has been sold. This Court finds that the Bankruptcy Court properly ruled that debtors may not reinstate the promissory note and mortgage after the entry of foreclosure judgment and confirmation of the sheriff's sale.

## FACTS OF THE CASE

On March 3, 1975 FLB loaned debtors $206,600.00, and they executed and delivered to FLB a promissory note in that amount. The note provided for payment in 20 consecutive annual installments to FLB. The note was secured by a first mortgage on 480 acres.

On February 1, 1986 debtors defaulted on the loan. The loan was called by FLB on April 18, 1986. Debtors failed to make the 1986 and 1987 payments to FLB.

FLB filed a foreclosure action against debtors and others in the District Court of Stanton County, Kansas. On October 2, 1986, judgment was entered in favor of FLB and against debtors and the other defendants foreclosing FLB's mortgage.

On November 14, 1986 the real estate was sold by sheriff's sale to FLB. On December 3, 1986 the state court entered an Order Confirming Sale.

The state court granted a period of redemption of six months from the date of

sale for the record owner of the real estate, Sand Creek Trust. The period of redemption commenced to run on November 14, 1986, and was to expire on May 14, 1987. Debtors filed their petition under Chapter 12 (11 U.S.C. § 1201, *et seq.*) on May 14, 1987, the last day of the six-month redemption period.

Under the terms of the Bankruptcy Plan, debtors proposed to reinstate the promissory note and mortgage and reamortize what they claimed to be the present value of the real estate ($145,440.00) over a thirty-year period at a fixed rate of interest. They sought to pay that amount commensurate with the real estate mortgage terms.

Debtors are indebted to FLB in the amount of $195,956.32, plus interest in the amount of $78.927 per day from and after May 14, 1987.

The facts as stated above are not disputed.

## DECISION

Debtors filed their Chapter 12 Petition herein on May 14, 1987, the day upon which the state court redemption period would expire. Judgment of foreclosure had been entered, the sheriff's sale had been held, and the state court had entered an Order Confirming Sale. Nearly six months had passed following the sale.

■ Debtors' power to modify the indebtedness to FLB is governed by 11 U.S. C. § 1222(b)(5). That statute provides as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Chapter 12 was closely modeled after the existing Chapter 13. The provisions of § 1222 generally follow the provisions of 11 U.S.C. § 1322, which is the corresponding section of Chapter 13. L. King, Collier on Bankruptcy, ¶ 1222.01, at 1222–3 (1987).

There is no discernible difference between § 1222(b)(5) and § 1322(b)(5). § 1322(b)(5) states:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Since the two sections are analogous, the Bankruptcy Court properly looked to cases decided under § 1322(b)(5) to determine the specific power given to a debtor to modify his obligations in a Chapter 12 plan.

The Bankruptcy Court held that upon entry of judgment of foreclosure, debtors' promissory note and mortgage merged in the judgment and no longer exist. Since only the judgment survived, the note and mortgage could not be reinstated and there was no "default" left to cure.

In so holding, the Bankruptcy Court relied on *In re Davis*, 15 B.R. 22 (Bankr.D. Kan.1981) *aff'd*, 16 B.R. 473 (D.Kan.1981). There, debtors filed Chapter 13 bankruptcy before the judgment of foreclosure was entered. The Bankruptcy Court permitted them to cure the pre-petition acceleration by paying the amount of the aggregate installment default. The Court relied on *In re Taddeo*, 9 B.R. 299 (Bankr.E.D.N.Y. 1981), *aff'd*, 685 F.2d 24 (2d Cir.1982), which permitted the curing of a pre-petition acceleration of a mortgage. However, the Court expressly disagreed with those parts of the *Taddeo* opinion indicating the same result would be obtained if the state court foreclosure had proceeded to judgment. 15 B.R. at 24.

On appeal, this Court affirmed. This Court observed that the Bankruptcy Court did not agree with the *Taddeo* case insofar as it would allow a debtor to cure a default even after state court judgment had been obtained. This Court then indicated:

There are strong policy considerations which would support a decision not to

allow a default to be cured once a creditor has obtained a foreclosure judgment in state court.... (16 B.R. at 475.)

This Court cited *In re Pearson,* 10 B.R. 189 (Bankr.E.D.N.Y.1981).

In *Pearson,* debtors filed Chapter 13 bankruptcy after entry of judgment of foreclosure, but prior to the sale. The court denied confirmation of the plan because it did not provide for payment of the judgment in full over the life of the plan. The court reasoned as follows:

To hold that, nevertheless, the bankruptcy court could approve a Chapter 13 plan that paid out over the life of the plan only the arrearages, not the full judgment, would create enormous uncertainty for all concerned—the mortgagor, the mortgagee, and the courts.

What would be the status of an unsatisfied judgment when the Chapter 13 plan terminated after three or five years, and the jurisdiction of the bankruptcy court ended? Could the mortgagee then seek enforcement of his judgment? If not, why not, since the judgment had never been satisfied? True, the Chapter 13 plan had cured arrearages, but it had not paid off the judgment. It would be up to the state courts to decide to what extent the judgment survived. How this would be done procedurally is unclear. Equally unclear is what the result would be. Nor would the results necessarily be uniform. For a period of years, neither the debtors, nor the mortgagees, would know their rights. (10 B.R. at 194.)

The court said the language of the bankruptcy statutes does not go so far as to void valid judgments. It distinguished the curing of defaults from the suspension, or annulment, of judgments. The court said Congress did not intend Chapter 13 to extend to the undoing of final judgments.

The Bankruptcy Court again addressed the right to cure default in *In re Elliott,* Case No. 82–10940, Adv. No. 82–0610 Slip Op. (Bankr.D.Kan.1983). The judgment of foreclosure had been entered prior to the filing of the Chapter 13 petition. The Court lifted the automatic stay to permit the creditor to proceed with foreclosure sale. The Court reasoned as follows:

Under Kansas law, the note and the mortgage lien are merged into the decree of foreclosure. *Dumont v. Taylor,* 67 Kan. 727, 74 P. 234 (1903); *Price v. First National Bank,* 62 Kan. 735, 64 P. 637 (1901). Therefore, there is no longer any recognizable default nor installment mortgage payments. All have been superseded by the judgment debt which is irreversibly accelerated. The proposal of the plan thus does not pass muster.

This Court approved and adopted the Bankruptcy Court's decision in the *Elliott* case.

■ Under Kansas law, a note and mortgage lien are merged in a foreclosure judgment. *Anderson v. Anderson,* 155 Kan. 69, 123 P.2d 315 (1942); *Dumont v. Taylor,* 67 Kan. 727, 74 P. 234 (1903); *Price v. First National Bank,* 62 Kan. 735, 64 P. 637 (1901). As a result of the merger, there is no longer any note or mortgage to reinstate. Thus, a Chapter 12 plan which proposes to reinstate the note and mortgage after judgment is entered cannot be confirmed. *In re Davis, supra; In re Bickell,* No. 83–40737, Slip Op. (Bankr.D.Kan. 1983); *In re Elliott, supra.*

The District of Kansas bankruptcy decisions have applied state law to that effect in the above cases. The entry of judgment effectively cuts off any right to reinstate or cure. This Court affirms the Bankruptcy Court's holding to that effect in the present case.

The application of Kansas law is supported by *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The United States Supreme Court held that bankruptcy courts should take whatever steps are necessary to ensure that mortgagees are afforded in bankruptcy court the same protection they would have under state law if no bankruptcy had ensued.

That approach was taken by the United States Court of Appeals for the Third Circuit in *Matter of Roach,* 824 F.2d 1370 (3rd Cir.1987). Debtors in their Chapter 13 plan proposed to cure the default and reinstate the mortgage. The court, citing *Butner,* observed that "the Bankruptcy Code was

written with the expectation that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests." 824 F.2d at 1374. "[A] desire for a uniform result in federal bankruptcy courts does not alone warrant the displacement of state law with judge-made federal law." 824 F.2d at 1379.

The court held that in the context of New Jersey law, the right to cure under § 1322(b) expires when the mortgagee obtains a foreclosure judgment. The court concluded that "beyond that point in the foreclosure process there are no substantial federal interests that would justify ignoring property interests created by the judgment of a New Jersey court." It held that the bankruptcy court properly refused to approve the debtors' plan. 824 F.2d at 1377.

The courts have generally applied the merger rule and refused to allow the debtor to cure after entry of judgment. *In re Morris*, 73 B.R. 358 (Bankr.D.N.J.1987); *In the Matter of Venech*, 67 B.R. 56 (Bankr. M.D.Fla.1986) (Chapter 13 filed one day before foreclosure sale); *In re Ristich*, 57 B.R. 568, 572 (Bankr.N.D.Ill.1986); *In the Matter of Akins*, 55 B.R. 183 (Bankr.M.D. Fla.1985); *In re Langguth*, 52 B.R. 572 (Bankr.N.D.Ill.1985); *In re White*, 22 B.R. 542 (Bankr.D.Del.1982); *In re Maiorino*, 15 B.R. 254 (Bankr.D.Conn.1981) (Chapter 13 filed four days before expiration of redemption period); *In re Jenkins*, 14 B.R. 748 (Bankr.N.D.Ill.1981); *In re Canady*, 9 B.R. 428 (Bankr.D.Conn.1981). *See also In the Matter of Brown*, 73 B.R. 306 (Bankr. D.N.J.1987); *In the Matter of Martinez*, 73 B.R. 300 (Bankr.N.J.1987); *In re McCreery*, 72 B.R. 275 (Bankr.N.D.Ohio 1987); *In re Palazzolo*, 55 B.R. 17 (Bankr. E.D.N.Y.1985); *In re Monroe Park*, 18 B.R. 790 (Bankr.D.Del.1982); *In re Anderson*, 16 B.R. 697 (Bankr.S.D.Ohio 1982); *In re Williams*, 11 B.R. 504 (Bankr. S.D.Tex.1981).

In the present case, the judgment of foreclosure was entered on October 2, 1986. Debtors did not file their bankruptcy until May 14, 1987 and have never redeemed. This Court affirms the Bankruptcy Court's finding that there is no note or mortgage left and that there is no "default" left to cure. The entire judgment is payable in full immediately.

Debtors' attempt to reinstate the note and mortgage must fail. As pointed out by the court in *Roach, supra*, § 1322(b)(5) is directed to cures of defaults in contractual relationships. The creditor holding a foreclosure judgment possesses independent rights by virtue of its judgment. Moreover, the judgment is immediately due and payable in its entirety from its inception. The concepts of "cure" and restoration have no practical significance. Section 1322(b)(5) does not authorize the extinguishing or suspending of rights created by the judgment. The same rationale applies to § 1222(b)(5).

A minority of courts have held that Section 1322(b)(5) permits a debtor to cure the default and reinstate the mortgage after entry of foreclosure judgment. *See In re Chambers*, 27 B.R. 687 (Bankr.S.D.Fla. 1983); *In re Johnson*, 29 B.R. 104 (Bankr. S.D.Fla.1983) (dicta); *In re Ivory*, 32 B.R. 788 (Bankr.D.Ore.1983). The two Florida cases apply Florida state law and are distinguishable on that basis from the present case, which follows Kansas state law. Further, the *Ivory* decision, in not following state law, is contrary to *Butner v. United States, supra*.

The Court concludes that the judgment and foreclosure sale in the present case preclude debtors from reinstating the note and mortgage. Debtors could have redeemed only by full satisfaction of the judgment debt within the redemption period. Upon entry of judgment they lost the right to cure and reinstate.

This Court finds that the Bankruptcy Court properly addressed the issues involved in this case. The findings and decision by the Bankruptcy Court are correct and not clearly erroneous. Accordingly, the appeal herein will be dismissed, and this case will be remanded to the Bankruptcy Court.