In re: **Verlin Eugene BLAND, Debtor.**

**Bankruptcy No. 92–11823–12.**

United States Bankruptcy Court,
D. Kansas.

Dec. 16, 1992.

Terry D. Criss of Hampton, Royce, Engleman & Nelson, Salina, KS, for debtor.

Charles F. Harris of Kaplan, McMillan and Harris, Wichita, KS, for the Farm Credit Bank of Wichita.

Edward J. Nazar of Redmond, Redmond & Nazar, Wichita, KS, for the Trustee.

## MEMORANDUM OPINION

JOHN T. FLANNAGAN, Bankruptcy Judge.

The Farm Credit Bank of Wichita (the "Bank") obtained judgment of foreclosure against Verlin Eugene Bland, the family farm debtor in this case, but did not conduct a sale of the land before the debtor filed his petition for Chapter 12 relief. The question is whether the doctrine of merger (of the mortgage into the judgment) as expressed in *In re McKinney*, 84 B.R. 748 (Bkrtcy.D.Kan.1987), *appeal dismissed*, 84 B.R. 751 (D.Kan.1988), prevents the debtor's plan of rehabilitation from restructuring the Farm Credit Bank's judgment debt.

Procedurally, the question is presented by the Bank's objection to confirmation of the debtor's plan and motion for relief from the automatic stay. This proceeding is core under 28 U.S.C. § 157; the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984.

Verlin Eugene Bland appears by his attorney, Terry D. Criss of Hampton, Royce, Engleman & Nelson, Salina, Kansas. The Bank appears by its attorney, Charles F. Harris of Kaplan, McMillan and Harris, Wichita, Kansas. The trustee appears by Edward J. Nazar of Redmond, Redmond & Nazar, Wichita, Kansas.

The Farm Credit Bank lent money to the debtor and took a mortgage on his Osborne County, Kansas, farm land in 1979. The debtor defaulted, and the Bank filed a mortgage foreclosure action in Osborne County. After a hearing held May 6, 1992, a Journal Entry of Judgment and Foreclosure in favor of the Bank was filed on May 27, 1992. The debtor then filed a voluntary petition for Chapter 12 relief on June 3, 1992. The filing of the Chapter 12 stayed the post-judgment foreclosure procedures and prevented the Bank from going forward with a foreclosure sale of the real property. 11 U.S.C. § 362.

For purposes of this proceeding, the parties do not dispute that the Bank is oversecured by approximately $40,000.00, the value of the real property being $154,250.00

while the amount of the Bank's claim is $113,902.56.

The Farm Credit Bank contends that under the doctrine of *In re McKinney*, 84 B.R. 748 (Bkrtcy.D.Kan.1987), *appeal dismissed*, 84 B.R. 751 (D.Kan.1988), following Kansas mortgage law, its mortgage debt was merged into the judgment that it obtained at the recording of the journal entry on May 27, 1992. *McKinney* held that the merger prevents the plan from curing the mortgage default, reinstating the debt according to the original contract terms, and repaying the debt by installments.

The debtor denies that the rule of the *McKinney* case applies. Additionally, he maintains that the judgment obtained in the state court was non-final so that any merger of the mortgage claim into the judgment that may have occurred by state law and the doctrine of *McKinney* is reversible, a position this opinion will not address.

 Section 1222 of the Code deals with the contents of a Chapter 12 plan. Subsection (a) of § 1222 sets forth what a Chapter 12 plan shall contain, and subsection (b) lists what it may contain. We are concerned with subsection (b) only, which reads:

**§ 1222. Contents of plan**

. . . .

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

(2) modify the rights of holders of *secured claims*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

(5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or *secured claim* on which the last payment is due after the date on which the final payment under the plan is due;

(6) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

(7) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;

(8) provide for the sale of all or any part of the property of the estate or the distribution of all or any part of the property of the estate among those having an interest in such property;

(9) provide for payment of allowed *secured claims* consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c);

(10) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity; *and*

(11) include any other appropriate provision not inconsistent with this title. (emphasis added)

The meaning of this statute is apparent. Through paragraphs (2) and (9), the plan is permitted to "modify" secured claims and pay them over a period beyond the allowable plan period of three to five years. By paragraphs (3) and (5), the plan may "cure" contract defaults by paying them within a reasonable time, reinstate the contract payments, and pay them over the original life of the contract, even though the payments may extend beyond the plan term. None of the granted powers are mutually exclusive. If the plan uses one power, it is not prohibited from using any other. Rather, it is clear from the use of the word "and" at the end of paragraph (10) that the plan

can use all of the listed powers at the same time. It can "cure" default on one secured claim, reinstate the installment payments, and pay out the debt by the terms of the original contract. And, at the same time, the plan can "modify" another secured claim according to the powers granted in paragraphs (2) and (9). Paragraph (9) empowers the plan to pay a secured claim consistent with § 1225(a)(5). This statute permits confirmation of a plan that deals with secured claims as follows:

§ 1225. Confirmation of plan

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . . .

(5) with respect to each allowed *secured claim* provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan. (emphasis added)

The Farm Credit Bank suggests that *In re McKinney*, 84 B.R. 748 (Bkrtcy.D.Kan. 1987), *appeal dismissed*, 84 B.R. 751 (D.Kan.1988), prevents the debtor from restructuring his debt as proposed in the plan. In the *McKinney* case, the mortgagee had obtained a foreclosure judgment and had successfully bid at the foreclosure sale when, on the last day of the redemption period, the debtor filed for Chapter 12 relief. Stating the issue, the bankruptcy court said, "The question of law is whether a debtor may *reinstate* a foreclosed mortgage after the foreclosure sale is held and *reamortize* the indebtedness under § 1222(b)." *Id.* at 749 (emphasis added). On appeal the district court rephrased the

issue saying, "At issue is whether a Chapter 12 debtor can *reinstate* a promissory note and mortgage once the state court foreclosure action has proceeded to judgment and the mortgaged real estate has been sold." *In re McKinney*, 84 B.R. 751, 752 (D.Kan.1988) (emphasis added.)

The essential operative fact in *McKinney* was that there had been a foreclosure sale before the bankruptcy petition was filed. That is not the case here, since no sale was completed and no Sheriff's Deed was delivered before the filing of the debtor's Chapter 12 petition and imposition of the automatic stay of creditor action.

While the operative facts in *McKinney* relating to judgment and sale are straightforward, what is not clear is how the court viewed what McKinney was proposing to do in his plan with the mortgagee's judgment claim. The following findings from the bankruptcy court's opinion reveals some confusion:

. . . .

13. In the plan the debtors propose to *reinstate* the FLB's note and mortgage and to make regular payments over *thirty years.*

14. No curing of arrearages is proposed. Instead of curing the default, the debtors propose to *reamortize* their indebtedness to FLB over a thirty-year period at a fixed interest rate of nine and one half percent per annum.

. . . .

*In re McKinney*, 84 B.R. 748, 749 (Bkrtcy. D.Kan.1987) (emphasis added).

Paragraph 13 speaks of a proposal to "reinstate" the note, an idea consistent with cure. But, paragraph 14 says no curing is proposed. Both paragraphs talk of paying the debt over 30 years, and paragraph 14 uses the word "reamortize."

Taken together, these two paragraphs make it appear that the debtor was proposing to "modify" the mortgagee's claim under 11 U.S.C. § 1222(b)(2), (9), and 11 U.S.C. § 1225(a)(5), rather than to "cure" the mortgage default and continue payments according to the contract terms under § 1222(b)(3) and (5). The district court

opinion bolsters the view that McKinney was proposing "modification" by pointing out that "... debtors proposed to reinstate the promissory note and mortgage and reamortize what they claimed to be the present value of the real estate ($145,440.00) over a thirty-year period at a fixed rate of interest." *In re McKinney*, 84 B.R. 751, 753 (D.Kan.1988). Yet, the original FLB note "... provided for payment in 20 consecutive annual installments to FLB." *Id.* at 752. Perhaps when the district court used the phrase "reinstate the promissory note and mortgage" in the above statement, it was speaking in the general sense, i.e., in the sense that the note and mortgage were to be restructured rather than reinstated. Extending a 20–year note and mortgage to a 30–year obligation is certainly more in the nature of modification or reamortization than it is in the nature of cure of default and reinstatement of the debt according to its original contract terms.

While it seems that McKinney's plan was attempting, at least in part, to "modify" the FLB's claim under authority of § 1222(b)(2) and (9), and stretch it out under § 1225(b)(5), both the bankruptcy court and the district court opinions rule as if the debtor was attempting only to cure the default on the note, reinstate its terms, and pay it accordingly, as if proceeding under 11 U.S.C. § 1222(b)(3) and (5). While both the bankruptcy and district court opinions use the word "modify" in discussing the plan proposal, they do so without any reference to the Code sections granting the debtor the power to make a "modification," i.e., §§ 1222(b)(2), (9), and 1225(a)(5).

Accordingly, the bankruptcy court in *McKinney* denied confirmation of the Chapter 12, ostensibly because the doctrine of merger under Kansas mortgage law merged the debt secured by the mortgage into the judgment, thereby making it impossible to decelerate the debt by cure under § 1222(b)(3) and (5). By the reasoning advanced, since the debt no longer existed after it merged into the judgment, it could not be "cured" and paid by its contract terms under the plan. On appeal to the district court, Judge Kelly dismissed the appeal with a discussion echoing Judge Pearson's comments.

This Court need not address the question of whether after judgment, but before sale, the merger doctrine of Kansas mortgage law bars the Chapter 12 debtor from using 11 U.S.C. § 1222(b)(3) and (5) to cure and reinstate a mortgage debt according to contract terms where it has become a judgment.[1] Rather, the question presented here is whether the debtor's plan, which seeks to "modify" the Farm Credit Bank's secured claim, should be denied confirmation for lack of statutory authority to do so under the Code where there has been no pre-petition sale.

The following excerpt from the debtor's plan shows that what he proposes is a "modification" of the claim under 11 U.S.C. § 1222(b)(2), (9), and 11 U.S.C. § 1225(a)(5), not "cure" of the defaulted debt and repayment according to the terms of the note and mortgage contracts under § 1222(b)(3) and (5).

**5.3(a)** The first segment of Farm Credit Bank's claim is that portion of its claim which is secured by a first real estate mortgage on NE¼ 26–10–11, Osborne County, which is valued at $47,750.00. On the Effective Date, Debtor shall execute a note in the amount of $47,750.00. Farm Credit Bank shall retain its mortgage lien on NE¼ 26–10–11, Osborne County, to secure said $47,750.00, until Debtor has paid Farm Credit Bank the full amount of the indebtedness, plus interest. The reamortized indebtedness shall be payable to Farm Credit Bank on the basis of a 30 year amortization with

---

1. Other interesting questions are whether an individual mortgagee who bids successfully at a pre-bankruptcy foreclosure sale holds a secured claim that a Chapter 12 plan can modify under §§ 1222(b)(2), (9), and 1225(a)(5) when there is a sale before the bankruptcy petition is filed and the redemption period has not expired, but (1) there has been no delivery of the Sheriff's Deed, or (2) there has been such a delivery before or after the filing. *Compare In Re Thompson,* 894 F.2d 1227 (10th Cir.1990) (federal law held controlling in determining point at which cure of default is prohibited under § 1322(b)(3) and (5) with dissent urging adherence to state law).

interest accruing thereon at the rate of 8.0%. Annual payments will be made on the thirty-first day of July of each year in the amount of $4,256.36 commencing on July 31, 1993, and continuing until paid in full.... [2]

The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). It then recognizes three types of liens: a "statutory lien," not relevant here; a "security interest" which is defined as a "lien created by an agreement," 11 U.S.C. § 101(51); and a "judicial lien" which is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

■ Under the Code, "debt" means "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a "right to payment...." 11 U.S.C. § 101(5). Under these definitions, the mortgagee Bank's judgment debt is a right to payment and, therefore, a claim.

■ Allowed claims are further broken down by 11 U.S.C. § 506(a) into secured and unsecured claims:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a *secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an *unsecured claim* to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C. § 506(a) (emphasis added). Since the real property is worth more than the debt owed the Bank, if the Bank has a secured claim, it is for the full amount of its debt in this case. We have seen that the Bank holds a "claim," but is the Bank's claim a "secured claim"? This depends on whether the estate has an interest in the real estate and the extent of that interest.

Unlike *In re McKinney*, there has been no foreclosure sale in this case. Upon the filing of the debtor's Chapter 12 petition, the bankruptcy estate succeeded to all of the mortgagor's interest in the property before foreclosure sale. At that point in time, the mortgagor was the fee owner of the property, subject to the lien of the mortgagee's judgment entered by the court at the filing of the journal entry of foreclosure.

While it may be correct that the mortgage debt merged into the judgment, its entry did not divest the debtor of his ownership rights in the real property. Since the state court plaintiff already held a mortgage lien, the entry of a judgment in its favor was not a "transfer" of debtor's fee title in the land.[3] Rather, it was simply a change in form of the Bank's lien against the realty. Upon the entry of the mortgage foreclosure judgment and the merger of the debt into the judgment, the only real change of status of the Farm Credit Bank was that it became the holder of a judicial lien on the real property, rather than the holder of a mortgage lien or "security interest," as such a "lien created by agreement" is called by the Bankruptcy Code. 11 U.S.C. § 101(51). The debtor was still the fee owner of the property, subject to a judicial lien equivalent in amount to the obligation that had been secured by the mortgage lien. The judgment creditor still had to bid at the foreclosure sale to protect its lien. Until it bid successfully, it was not entitled to a Sheriff's Deed. Since there was no transfer of title at the time judgment was entered, the ownership of the real property remained in the mortgagor until it passed into the bankruptcy estate upon the filing of the Chapter 12 petition.

**2.** Since the Court took this proceeding under advisement, the debtor has filed an amended plan that changes the treatment of the Farm Credit Bank's claims but still constitutes an attempt to "modify" its secured claim under §§ 1222(b)(2), (9), and 1225(a)(5).

**3.** When there is a transfer by foreclosure sale, the question becomes whether it can be set aside under § 548 or § 544 as a fraudulent transfer. If the transfer occurred within one year of the bankruptcy filing, or perhaps two years if state law is applied through § 544, and the consideration given is found to be insufficient, the transfer may be avoidable. *Durrett v. Washington Nat'l Insurance Co.,* 621 F.2d 201 (5th Cir.1980) (non-judicial sale held to be avoidable transfer for lack of fair consideration under § 67(d) of the Bankruptcy Act of 1898).

Since the Farm Credit Bank is a judicial creditor with a lien on the land in which the bankruptcy estate has an interest, it is the holder of a secured claim. 11 U.S.C. § 506. Sections 1222(b)(2), (9), and 1225(a)(5) permit confirmation of a plan that proposes to modify such a secured claim.

Since the debtor's plan proposing to modify the Farm Credit Bank's secured claim cannot be denied confirmation on the grounds advanced by the Farm Credit Bank in this proceeding, its motions objecting to the plan and seeking stay relief are hereby denied.

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.